**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHEWY, INC.,

       Plaintiff/Counter-Defendant,

                   v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

       Defendant/Counter-Plaintiff.

Case No. 1:21-cv-1319 (JSR)

**CHEWY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**SANCTIONS PURSUANT TO RULE 11**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD REGARDING RULE 11 ................................................... 2

III.    ARGUMENT ......................................................................................................... 3

        A.    The '831 Patent ......................................................................................... 3

        B.    IBM's Infringement Claims For the '831 Patent Are Frivolous .......................................... 4

               1.    Chewy Does Not "Receiv[e] A Page" ........................................... 4

               2.    Chewy Does Not "Render[] The Received Page On A Virtual Display To Form A Rendered Page" ........................................... 6

               3.    Chewy Does Not Perform The Step Of "Determining Whether The Rendered Page Falls Within A Proximity Policy" .................................. 10

IV.    CONCLUSION .................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*McCabe v. Lifetime Ent. Servs., LLC*,
   761 F. App'x 38 (2d Cir. 2019) ...............................................................................2

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
   682 F.3d 170 (2d Cir. 2012)....................................................................................2

**Other Authorities**

Fed. R. Civ. P. 11 ...........................................................................................................2, 3

## I.   INTRODUCTION

Plaintiff Chewy, Inc. ("Chewy") submits the following memorandum of law in support of its motion for sanctions under Rule 11 resulting from defendant International Business Machines Corporation's ("IBM") continued assertion of infringement claims relating to U.S. Patent No. 7,496,831 ("the '831 patent") following the Court's construction of the disputed terms.

The asserted claims of the '831 patent require, among other things, the steps of (i) receiving a page, (ii) rendering the received page on a virtual display, (iii) determining whether the rendered page falls within a proximity policy, (iv) if so, reformatting the rendered page, and (v) presenting the reformatted page to the user. At the beginning of this case[1] (and up until claim construction), IBM took the position that the web page allegedly rendered on the virtual display (before determining whether it complies with a proximity policy) is the web page displayed to the user when the user visits www.chewy.com. However, without admitting that IBM's original position had any merit – it did not – when the Court construed "virtual display" to mean "a web browser unit onto which the page is projected *prior to displaying it to the user*" (Dkt. 90 at 57 (emphasis added)), IBM came up with a new argument – namely, that something called the "render tree" that is constructed by the web browser during the process of rending a web page constitutes the page that is rendered on the virtual display.

However, the evidence in the record demonstrates beyond any doubt that the render tree cannot possibly constitute the rendered page since, among other reasons, in IBM's expert's own words, "the distance between [the hyperlinks on the render tree] *is undefined and unknown*." (Ex. 1 (Cockburn Dep. Tr.) at 253:2-6). And, for that reason, it is not possible to determine whether

---

[1] IBM did not assert the '831 patent in its original counterclaims but added that patent to the case in its First Amended Counterclaims (Dkt. 41) in May 2021.

1

that rendered page falls within a "proximity policy" – which was construed to mean a "user-defined policy specifying spacing rules for hyperlinks." (Dkt. 90 at 63). In addition, as demonstrated below, Chewy cannot possibly perform any of the other required steps of the claims.

For these reasons, among many others discussed below, IBM's infringement claims under the '831 patent are not "warranted by existing law or by a nonfrivolous argument." Fed. R. Civ. P. 11(b). Rather, IBM's arguments are objectively unreasonable and, as a result, IBM should be sanctioned pursuant to Rule 11 for maintaining them.

## II.    LEGAL STANDARD REGARDING RULE 11

Rule 11(b), in relevant part, provides:

By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). The standard for determining whether Rule 11 has been violated is "objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (citation omitted). Bad faith is not required. *McCabe v. Lifetime Ent. Servs., LLC*, 761 F. App'x 38, 41 (2d Cir. 2019) ("Rule 11 requires that the conduct in question be objectively unreasonable and therefore does not require a finding of subjective bad faith."). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been

violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

## III.   ARGUMENT

### A.   The '831 Patent

The '831 patent is directed to "a method and system for uncluttering and reformatting a web page before presenting the web page to a user." '831 patent at 1:9-10. IBM has asserted claims 1, 7 and 10 of the '831 patent. Claim 1 (from which claims 7 and 10 depend) recites as follows:

> 1. A computer implemented method in a computer system for presenting a page, the method comprising:
>
>> receiving a page;
>>
>> rendering the received page on a virtual display to form a rendered page;
>>
>> determining whether the rendered page falls within a proximity policy;
>>
>> responsive to determining that the rendered page does not fall within the proximity policy, reformatting the rendered page on the virtual display to fall within the proximity policy to form a reformatted page, wherein
>>
>> the proximity policy defines a minimal spacing between links of a plurality of links within the page; and
>>
>> presenting the reformatted page to a user.

The '831 specification explains that, in accordance with the method of the purported invention, "the server projects the web page content on virtual display 608." '831 patent at 7:53-55. Then, the web browser "may determine that hyperlinks displayed on [the] page . . . are cluttered based on several criteria. Such criteria may be, for example, the number of hyperlinks per unit of measure, vertical spacing between hyperlinks and/or horizontal spacing between hyperlinks displayed on the page of the electronic document." *Id*. at 7:57-63. In other words, the web browser determines whether the page falls within a "proximity policy," which has been construed to mean a "user-defined policy specifying spacing rules for hyperlinks." (Dkt. 90 at 63). If the page does

not fall within the proximity policy, "the web browser reformats the document . . . [and then] the browser renders the document page." '831 patent at 10:57-60.

On November 9, 2021, the Court issued its claim constructions for the disputed terms of the '831 patent. (Dkt. 90). Those constructions are set forth below:

| Disputed Claim Term or Phrase | The Court's Construction |
|---|---|
| "virtual display" | a web browser unit onto which the page is projected prior to displaying it to the user |
| "proximity policy" | user-defined policy specifying spacing rules for hyperlinks |

### B.    IBM's Infringement Claims For the '831 Patent Are Frivolous

#### 1.    Chewy Does Not "Receiv[e] A Page"

The first step of the method recited in claim 1 is "receiving a page." While that step was not construed by the Court, its meaning is clear and unambiguous – the requested web page is received *by the user's web browser*. Specifically, the specification explains the process of the web browser sending a request to the web server for a web page and the server then returning that web page to the browser, which thereby "receives" the page:

> In this example, the operation starts by a web browser receiving a universal resource locator (URL) request to access an electronic document (step 802). The web browser then contacts the web server to request an electronic document associated with the URL (step 804). The web server then searches a web database to determine if an electronic document associated with the URL exists (step 806). . . . [I]f a document does exist in web database associated with the requested URL (step 808:YES), the server retrieves the document from the web database (step 810). The server then sends the document to the web browser (step 812) and *the web browser receives the document* (step 814).

('831 patent at 10:12-32) (emphasis added).

Despite the clear meaning of "receiving a page," IBM takes the frivolous position that it is *Chewy* (i.e., the *web server* in the above specification excerpt) that receives the page. In other words, according to IBM, Chewy *both* sends *and* receives the page. (*See* Ex. 2 (Cockburn Rep.,

4

Ex. D) at ¶ 53 ("For example, Chewy's website . . . receives a page when users visit Chewy's website or submit a query on Chewy's website including entering a search or selecting a product category") (*see also id.* at ¶¶ 54-56)).

When asked during his deposition to explain this remarkable position, IBM's expert, Dr. Cockburn, responded that Chewy performs the step of receiving a page because Chewy "directs and controls the receiving of the page." (Cockburn Dep. Tr. at 203:6-19; *see also id.* at 203:22-204:2 ("A. Anytime a user goes to Chewy's website, Chewy provides to the user's computer a page. Their server computers and their source code result in the receiving a page. They direct and control that process."); 205:22-206:4 ("Q. Okay. So a user receives the page at the direction and control of Chewy. Is that what your opinion is? A. A user's browser will receive a page under the direction and control of Chewy."); 215:24-216:2 ("The user receives the page as a result of the processes that Chewy directed and controlled to allow them to receive the page.")).[2] Therefore, IBM argues that Chewy "*receives* a page" because Chewy *provides* the page to the user's computer resulting in the receiving of a page. This position is wrong and indeed frivolous.

IBM's position is analogous to two people having a catch. It is IBM's position that the person throwing the ball (i.e., Chewy) both throws the ball and catches the ball. Indeed, when presented with that analogy at his deposition, Dr. Cockburn agreed that the person throwing the ball did not receive the ball. But, according to Dr. Cockburn, the person receiving the ball could not have received it if the other person did not throw it:

---

[2] Similarly, Dr. Cockburn states in his expert report that "the performance [of the receiving step] is attributable to Chewy because Chewy directs and control [sic] the performance of the third party *. . . by wholly controlling what data is returned to a user or a browser at a user's computer* because the Chewy user's computer, browser, and/or operating system merely parses Chewy's data and creates a webpage according to Chewy's data sent from the server." (Cockburn Rep., Ex. D at ¶ 54).

Q. If you and I are having a catch, and I throw a ball to you and you catch it, did you receive the ball?

A. In this context, yes. I received the ball.

Q. Did I, as the person who threw the ball to you, did I receive the ball?

A. In this case, you did not receive the ball. But I could not have received it in this case if you . . . had not furnished it to me.

(Cockburn Dep. Tr. at 211:24-212:9). However, the fact that the user's computer or browser could not have received the page unless Chewy sent it does not mean that Chewy "received" the page or that Chewy directed and controlled the user to receive the page.

As explained by Chewy's expert, Dr. Almeroth, "the decision to access the Chewy website and 'receiv[e] a page' is completely the user's." (Ex. 3 (Almeroth Rep., Appx. D) at ¶ 89). In other words, Chewy does not send the page to the browser on the user's computer, and the browser does not receive the page, unless and until the user first requests that page. (*See* Cockburn Dep. Tr. at 207:23-25 ("Q. But Chewy didn't force a user to type in www.chewy.com, right? A. That's fair.")). Thus, Chewy cannot be said to direct and control the browser or the user's computer to receive the page. Chewy has no say in the matter.

Accordingly, because Chewy does not perform the step of "receiving a page," Chewy cannot infringe any of the asserted claims of the '831 patent. And, no non-frivolous argument exists that it can. For this reason alone, Rule 11 sanctions should be entered.

### 2. Chewy Does Not "Render[] The Received Page On A Virtual Display To Form A Rendered Page"

After the page is received in the first step, claim 1 requires the step of "rendering the received page on a virtual display to form a rendered page." In addition, claim 1 requires the subsequent step of "determining whether the rendered page [i.e., the page rendered on the virtual display] falls within a proximity policy." As discussed above, "virtual display" has been construed

6

to mean "a web browser unit onto which the page is projected prior to displaying it to the user" and "proximity policy" has been construed to mean a "user-defined policy specifying spacing rules for hyperlinks." (Dkt. 90 at 57, 63). Accordingly, in order for the "rendering" step of claim 1 to be performed, the "received page" that is projected on the alleged "virtual display" must contain hyperlinks with defined spacing between them. Otherwise, it would not be possible to determine whether the page complies with the proximity policy's spacing rules for hyperlinks. However, as demonstrated below, the page alleged by IBM to be projected onto the virtual display – i.e., the "render tree" – does not have hyperlinks with defined spacing between them. And, for that additional reason, Chewy cannot infringe any asserted claim of the '831 patent and IBM's position that it can is frivolous.

At the outset of this case, prior to claim construction, IBM took the position that the received page that is rendered on the virtual display was the page that is displayed to the user when the user first requests the page. (*See* Infringement Contentions, Ex. D (Dkt. 41-24) at 10 ("Chewy renders the received page on a virtual display to form a rendered page by, for example, generating the data necessary to render the received page, including HTML, JavaScript, JSON files, images, and other data, and sending said data in HTTP Responses to Chewy users' computers and mobile devices."); *see also id.* at 8-9, 11-12). The page alleged by IBM in its original contentions to be rendered on the virtual display is shown below on the left:



IBM-CHEWY00074253 at 0:33 to 0:42 (showing Chewy reformatting a rendered page with hyperlinks having a width of 23% to form a reformatted page with hyperlinks having a width of 31.33%) (annotation added).

(Dkt. 41-24 at 17 (annotations added)). Then, following the Court's construction of "virtual display" to require that the page be projected thereon *prior to being displayed to the user*, IBM was forced to change its position regarding the "rendering" step of claim 1. Specifically, IBM now takes the position that something called the "render tree," which is created during the process of the web browser's rendering of a page for display to the user, constitutes the claimed page that is rendered on the virtual display. (*See, e.g.,* Cockburn Dep. Tr. at 251:15-16 ("I would say the render tree is the – is the virtual display")). IBM argues that the render tree "is projected internally to the browser and is not initially visible to the user." (Cockburn Rep., Ex. D at ¶ 74).

However, the render tree cannot possibly be the page rendered on the virtual display during the "rendering" step because the render tree does not contain any hyperlinks with defined spacing between them (and, thus, the subsequent "determining" step cannot be performed to determine whether the render tree complies with the claimed proximity policy). To be sure, during his deposition, IBM's expert, Dr. Cockburn, confirmed this to be true:

Q. And at the time that the render tree has been created, is it possible to measure the distance between the hyperlinks on that web page?

A. *I think the distance between those elements at that point is undefined and unknown.*

8

Q. Okay. So you can't measure the distance between the hyperlinks at the time that the render tree has been created, correct?

A. You can certainly determine that the hyperlinks do not fall within a proximity policy if the spacing between them is unknown.

Q. Okay. But the spacing between them at that point is unknown. Is that correct?

A. *I think that's fair.*

Q. Okay. So at the time that you contend that the page has been rendered on a virtual display, the spacing between the hyperlinks is unknown, correct?

A**.** *Yes. The layout step has not yet been executed and the spacing between them is unknown.*

(Cockburn Dep. Tr. at 253:2-24) (emphasis added).

The fact that the spacing between any hyperlinks on the render tree is not defined is also demonstrated by the same documents on which IBM's own expert relies in his report. For example, as explained by Chewy's expert, Dr. Almeroth, Kosaka 2020 (a document produced by IBM that purports to describe the rendering process of a browser) explains that the rendering process up to and including the creation of the render tree "is not enough to render a page." (Almeroth Rep., Appx. D at ¶ 104) (citing Kosaka 2020 at IBM-CHEWY00159749). At the time the render tree is created, "the browser still lacks the information to 'render a page' because the renderer still lacks the size and location of each element on the page [including the hyperlinks] as well [as] the order in which each element on the page should be painted." (*Id.*) Dr. Cockburn once again confirmed this during his deposition:

Q. Okay. So after the first two steps of the rendering process [up to and including the creation of the render tree], which you contend constitutes the rendering of the received page on a virtual display, geometry of the elements has not yet been determined. Is that correct?

A. Yes. The layout stage [which comes after the creation of the render tree] determines the geometry for the objects.

Q. Okay. And xy coordinates, the bounding of box sizes, none of that has been performed yet, correct?

A. Until the layout process begins, that's correct.

(Cockburn Dep. Tr. at 260:14-261:2).

Accordingly, there can be no dispute that the render tree (i.e., the alleged "rendered page" on the virtual display) does not include hyperlinks with defined spacing between them (and, thus, it is not possible to determine whether that render tree complies with any proximity policy). For that reason, among others, Chewy does not perform the "rendering" step of the asserted claims and IBM's position that it does is frivolous.

### 3.    Chewy Does Not Perform The Step Of "Determining Whether The Rendered Page Falls Within A Proximity Policy"

As demonstrated above, the alleged "rendered page" – i.e., the render tree – does not have any defined spacing between hyperlinks. It therefore follows that Chewy cannot possibly perform the step of "determining whether the rendered page falls within a proximity policy." This is because "proximity policy" was construed by the Court to mean a "user-defined policy specifying spacing rules for hyperlinks" (Dkt. 90 at 63), and it is simply impossible to determine whether a rendered page complies with spacing rules for hyperlinks if the page does not even have defined spacing between links to begin with. For this reason alone, Chewy cannot perform the "determining" step of the asserted claims.

In addition, Chewy cannot perform the "determining" step for yet another reason – the Chewy website does not utilize any "proximity policy" at all. According to IBM, the alleged proximity policy utilized by the Chewy website are the rules contained in certain @media queries recited in Chewy's source code. (*See* Cockburn Rep., Ex. D at ¶ 85 ("The media queries on Chewy's web page enables a user to specify the spacing between the product tiles through selectively applying for example, width CSS, and margin CSS properties based on the width of the browser in pixels. Each media query is specific to a particular range of browser sizes and acts

as the proximity policy for that range.")). Specifically, depending on the width of the browser window, the Chewy source code will apply one of several @media queries which include the rules for, among other things, defining the spacing between hyperlinks.[3] However, it is not and cannot be disputed that those rules are set *by Chewy*, not by the user. (*See* Almeroth Report, Ex. D at ¶ 113). Dr. Cockburn conceded this fact during his deposition:

> Q. Okay, so we'll refer to those as the "rules." Chewy sets the rules for each media query, right?
>
> A. Chewy sets the rules for a set of media queries, and the proximity policy is determined when a particular @media query is selected as a result of the user's browser width.
>
> Q. Right. And when a user sets the browser width, the user didn't know which media query is going to be used, right?
>
> A. A user is unlikely to know that these effects are achieved by @media queries but as a user interacts with which Chewy's website, they will learn, for instance that when they change the width of a browser to a narrow window, they will see a particular number of items arranged across the columns. So they're familiar with the outcomes of the selection of a proximity policy.

(Cockburn Dep. Tr. at 281:22-282:18). Thus, IBM concedes that the alleged rules for hyperlinks are set by Chewy, and not by the user. While IBM argues that the proximity policy (i.e., the particular @media query) is selected by the user when the user resizes his or her browser window, Dr. Cockburn admits that the user doesn't even know which @media query will be used when the browser width is set. Therefore, a non-frivolous argument cannot be made that the user is the one who sets the proximity policy. The @media queries are set by Chewy, about that there can be no dispute.

---

[3] Under Dr. Cockburn's infringement theory, this occurs when a user resizes the width of the browser. (Cockburn Report, Ex. D at ¶¶ 85-90). Thus, Dr. Cockburn concedes that the hyperlinks on the page, and the spacing between them, are not defined until well after the render tree is created.

Moreover, even if the @media queries can be considered "proximity policies" under the Court's construction, Chewy still cannot perform the "determining" step because, at the time the render tree has been created, the particular @media query *has not even been determined*. (*See* Cockburn Dep. Tr. at 275:9-13 ("Q. At the time that the render tree has been created, has the particular media query or proximity policy been determined yet? A. No, that would be part of the layout step."); 277:10-14 ("Q. So at the time that the received page is rendered on a virtual display to form a rendered page, the proximity policy has not yet been set? Is that correct? A. Yes.")). Thus, since, at the time the render tree is created, the @media query – i.e., the alleged proximity policy – has not yet been set, it therefore follows that the step of determining whether the render tree complies with the proximity policy cannot be performed.

IBM's response to these undisputed facts is that, if the policy has not been applied, then a determination has been made that the render tree does not comply with the policy. (*See* Cockburn Dep. Tr. at 259:21-260:2 ("Q. So how can a determination be made regarding whether the rendered tree complies with spacing rules between hyperlinks if we don't know what the spacing is between the hyperlinks? A. Well, we know it doesn't comply with the policy if the policy hasn't been applied."); Cockburn Rep., Ex. D at ¶ 92 ("Chewy performs the step of 'determining whether the rendered page falls within a proximity policy' when the data defining the Chewy webpage is processed for the first time to specify the appearance of the Chewy webpage. . . . Chewy's website determines whether the rendered page falls within that proximity policy when it determines whether the proximity policy has been processed to specify the appearance of the Chewy webpage. . . . The page does not fall within that proximity policy if the CSS has not been applied to the HTML that the user receives from the Chewy website.")). In other words, IBM takes the remarkable position that, if the proximity policy has not been set for the page, then the page cannot

comply with any policy! But that circular – and frivolous – argument cannot stand. If IBM's position were accepted, no proximity policy at all would be required to infringe this limitation of the claims.

For these additional reasons, Chewy cannot infringe any asserted claim of the '831 patent and IBM should be sanctioned under Rule 11 for maintaining its frivolous infringement arguments.

## IV.    CONCLUSION

For the foregoing reasons, Chewy respectfully requests that the Court enter sanctions against IBM – including Chewy's expenses and attorneys' fees – pursuant to Rule 11 as a result of IBM's continued assertion of infringement of the '831 patent.

Dated: January 20, 2022                      Respectfully submitted,

By: */s/ Joshua L. Raskin*
Joshua L. Raskin
Allan A. Kassenoff
Julie P. Bookbinder
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: 212.801.9200
Facsimile: 212.801.6400
RaskinJ@gtlaw.com
KassenoffA@gtlaw.com
Bookbinderj@gtlaw.com

*Counsel for Plaintiff and Counterclaim-Defendant Chewy, Inc.*

13